Globe Indemnity Company.                 No. 8 0 0 1 .

    –versus–                           Court of Appeal.

International Ship Supply Co.             Parish of Orleans.
         Inc.

Dinkelspiel. J.

8001

Dinkelspiel. J.

Plaintiff subrogated to the rights of Sterns Auction
Exchange, Incorporated, sues defendant, the International
Ship Supply Company, Incorporated, claiming that defendant
is indebted to plaintiff in the sum of $469.10.

Further alleging, that on a policy of insurance carried
by the Sterns Auction Exchange, issued by plaintiff, cov-
ering damages which their motor vehicle might receive by
a collision, and that on the 23rd. of October, 1919, a
Republic Truck, owned and operated by Sterns Auction Exchan-
age, and covered by said insurance, was proceeding in
Bienville Street, from the river in the direction of the
lake or woods, driven by an employee of Sterns Auction
Exchange, and upon reaching a point near the intersection
of Bienville and Decateur Streets, the driver sounded his
horn and proceeded to cross said intersection; and when
gaining the intersection by the above named streets, a
truck owned and operated by the International Ship Supply
Company, Incorporated, ran into and collided with the
truck of the Sterns Exchange damaging same in the amount
claimed.

That the Sterns Exchange truck was operated in accor-
dance with law and the ordinances of the City of New Orle-
ans for the regulation of traffic upon it's streets and
roadways, and claiming further, that the damage done to
said truck amounted to the sum of $469,10, which the
Globe Indemnity Company, plaintiff herein, paid and re-
imbursed to Sterns Exchange, on account of and by reason
of it's liability under it's said policy of insurance,
and by reason of said payment under the terms of said
policy said Globe Indemnity Company became subrogated to
all rights, actions and claims for damage that said Sterns

486

Exchange, has or had under said policy; that said accident and collision was not due to the fault, negligence or want of care on the part of said Sterns Exchange, or it's servants or agents.

And, further avering, that said accident and collision was due solely and only to defendant, it's agents, servants or employees for whom it is responsible in law and who at the happening, of said accident and collision were operating said truck for account of defendant and in due course of it's business.

And further , that defendant was guilty of negligence in violating the ordinance of the City of New Orleans, particularly the portions of ordinace No. 5181, Commission Council Series, and other laws for the regulation of traffic within the limits of the City of New Orleans; that said truck was being operated at an excessive and unlawful rate of speed, particularly in attempting to cross an intersecion of streets without slowing down the speed of said truck; that defendant is guilty of negligence for the reason that the driver of it's truck failed to sound it's horn, or otherwise signal the approach of said truck of defendant by not comforming to the regulations fixed by law, and finally that defendant was guilty of negligence in failing to have daid truck under control.

The answer admits the occurence of the collision referred to, but denies that it's truck ran into that of the Sterns Auction Exchange, and predicates said denial upon the lack of sufficient information to justify belief, denying, that the truck of the Sterns Exchange was damaged in the amount as alleged.

Further answering denying all and singular the allegations contained in plaintiff's petition, and further answering says; that the collision complained of was due, solaly and entirely, to the negligence of the party oper-

487

-ating plaintiff's automobile& truck at the time of the accident, and that defendant's truck was travelling at a slow and moderate rate of speed in conformaty with the requirements of the City traffic ordinances, and that said truck was at the time being driven south in Decatur Street which is a main artery of thoroug hfare upon which there is an unusual amount of traffic, that the horn upon defendant's truck was sounded upon approaching the intersection of Bienville Street, and that no horn signal was sounded by the party operating plaintiff's truck in Bienville Street, and that said party was at the time driving plaintiff's automobile truck at a high and reckless rate of speed violating the requirements of the traffic ordinances referred to in the petition of plaintiff, and violating the ordinary rules of caution and safety dicated by the fact that plaintiff's truck was at the time approaching a main artery of thoroughfare. Defendant further alleges, that it's truck was damaged in the collision complained of, and reserves the right to sue for damages in future.

A motion to dismiss plaintiff' suit was filed subsequent to the filing of a suit by the Sterns Auction Exchange against the same defendant, for the same cause of action, which was over- -ruled by the Court.

On the trial , on the merits, on behalf of plaintiff, Arthur Lindsay, the driver of the truck in question was examined;-
Q- What happened that was out of the ordinary?
A- Well, at the corner of Bienville and Decatur another truck run into mine there, and that was out of the ordinary. I was coming from North Peters and Bienville, from delivering a desk, and was coming to the store. I was half a block between Bienville and Becatur which runs into a point there, and right at North Peters and Decatur, the accident occurred. He was going out Bienville from the direction of the river to the woods. And in answer to a question to state just what happened, he says:

" I turned around; I gets near Decatur on Bienville; I
blows my horn; I hears no reply from no one, I started on
accross the street, and by that time there was another truck
going up Decatur Street towards Canal, he was coming at a rapid
speed, I blowed and heard no one answer, naturally I started on
across, and I realized that he was coming, and that is the
time I turned on the emergency brake, stopped myself, and he
ran right into us, and bursted my engine all to pieces, also
the radiator."

Q- How far did the truck of the International Supply go after it
hit your truck?

A- About ten feet as near as I could get it. He was hit on the
right hand side of seat, front seat of the truck; his engine
was bursted half in two, the radiator was bursted all to pieces
and it was leaking.

Q- Did you notice what side of Decatur this other truck was
going  up in the direction of Canal Street on the right hand or
left hand side?

A- No. He was near the middle of the street,for the simple reason
Q- when he struck my truck, it was right near the middle of
Bienville and Decatur, because I had'nt quite got to the corner
when I slid. The accident occurred about half past one in the
day time.

Q- How far, if at all, did your truck skid when you applied
the brakes?

A- Well, as near as I can get at it about six foot. The streets
were dry. The truck was a heavy truck  weighing a ton and a
half. The International Ship Supply truck stopped just across
Bienville Street on the right hand side near the woods sidewalk.

The next witness, Edward Buckter, testified; he worked on the
truck of the Sterns Auction Exchange as a helper and was with kxhm
the driver Lindsey at the time of the accident. He says:- " We
came out from Decatur Street and delivered a desk, and was
coming back from there to go to the store on the truck when tkix

489

this other truck hit us. When we reached Decatur Street the driver blowed his horn, he got no answer, so we started out again to go across, the and just as we started to go across the other fellow was coming down this street towards Canal Street. Lindsey put his brakes on to stop his truck, but nevertheless he was struck, after he struck he knocked the engine off towards Canal Street, the way he was going, and he went about ten or fifteen feet before he stopped."

Q- You say he was coming up Decatur Street, and struck your truck, and knocked you all towards Canal Street, and went about ten or fifteen feet before he stopped?   -A- Yes.

Q- How fast was the truck you were on travelling?

A- Was'nt going very fast; he was putting her in second after he blew his horn, than he started to pull back in third to go across, and after he did'nt get no  answer, and just as he discovered he the other fellow coming this way he throwed his brake and he stop -ped her just about four feet and skidded.

Q- When was the first time that you knew the other truck was coming up the street?

A- It was just, I looked up when he grabbed the lever, the emergency brake, when he grabbed it, that is when I threw my eyes and seen him coming, and the time I looked at him he was right on us, he knocked our truck and he ran about ten or fifteen feet before he stopped.

Mr. Campbell, who is the Vice President of the Sterns Auction Exchange fixes the amount of damage paid by plaintiff company, which was admitted to be correct, and they received the amount of money from the insurance company.

In behalf of defendant there were three witnesses examined. B. C. Francinques was the first witness. He saw the accident at the Corner of Bienville and Decatur Streets. He says, he was coming down off Bienville Street and walking from the woods to the river on Bienville Street right on the corner, he was on the river side, there was a yellow truck of the supply

490

company coming along Decatur Street very slow blowing his horn; there was a truck coming in from Bienville Street, very high speed; two niggers drivers; the delivery truck ran into the back of the yellow truck on the left hand side, and after he hit the truck he skidded at least thirty feet, then this other truck came right to a stand, the yellow truck.

He goes on to dtate, that the Sterns truck, travelling in Bienville Street skidded after it had hit that truck, it skidded right through, could'nt even control the truck.

Q- Was any horn signal given by the Sterns Auction Exchange truck?

A- None at all; coming right through at full speed.

Q- Was any horn signal given by the International Ship Supply truck?

Q- Yes; blowing his horn, that is what brought me to a stop, I let him pass. The International Ship Supply truck was going very slow, possibly eight miles, ten miles, and that is about all it was going. I first saw the truck of the International Supply coming up Decatur Street, he blew his horn, that drew my attention and I stopped to let him pass; it's an awfully mean corner there; there is an accident there every second day, because I deliver bread in that neighborhood. The truck was on the right hand side going uptown. Decatur Street is a one way street.

He goes on to testify: " I supply all the places around that neighborhood with bread with teams and I walk behind my wagon. I come out of Leon Leroques when them two niggers were in there drinking, when I came out they was on the truck argueing, they was coming along, driving fast, and they ran into the back part of this truck and they skidded right along. "

Q- Had that truck actually passed the intersection of those two streets?

A- No; he was struck as he was coming between the two streets, on Bienville Street, as he was going up, this truck came along on Bienville Street, and struck him right in the back paert of it; he could not strike him if he passed the street, he would have never pushed him.

491

The next witness, Anthony St. Phillip. He was the driver for the National Ship Supply Company on the 23rd. of October, 1919, and was driving it's truck on the occasion of the accident at the corner of Bienville and Decatur Sts., and in accounting for the accident and how it occurred, he says:- " I was coming up Decatur Street about half past one going towards Canal Street, while crossing Bienville Street, Sterns truck coming at a pretty, good rate, hit my rear seat, and that is all I could see to it. I was going at the rate of eight or nine miles, something like that. I was sounding the horn as it approached the intersection of Bienville Street, and if there was any horn sounded by the other truck I never heard it. The Sterns truck skidded and that is the way he hit my truck ; they were going about eighteen miles an hour anda at a full loop, and at that rate the man crushed into my rear end, and he skidded fully thirty feet before he struck my truck, and the street was dry; Decatur Street is a one way street. He was travelling towards uptown, and Decatur Street is very much used for traffic and a very buisy street. When he was struck he was about the middle of Decatur Street, and before he could get on either side, because it is usually all blocked up with vehicles of all kinds; you have to stay about the middle of the street, and I was in the center of Decatur a little towards Canal Street, and nearly over when the other truck nailed me. ( Page 34, of his testimony.)

Q- What portion of your truck came in contact with the other truck?

A- Well, the front end of his truck hit my right wheel right square; that is all I seen the damage.

Q- The first portion of your truck which came in contact with the other one was that portion near the drivers seat, is that correct or not?

A- No, Sir; his truck just hit the rear end no other part was struck; my truck did'nt strike his truck in any other place. but the rear end; the only portion of my truck that ever got hit.

The next witness was Mr. Robinson, who testified as follows:–

Q- What if anything, do you know about the facts in connection with the accident in which a truck of the National Ship Supply Company collided with a truck of the Sterns Auction Exchane Copany, at the Corner of Bienville and Decatur Street on October, 23rd. 1919. Did you witness the accident itself?

A- No; I did'nt witness the accident, but I went at the scene about ten minutes later, and the vehicles were still on the scene of the accident. One of them, the Sterns vehicle, I saw the skidded mark starting on Bienville and continueing up Decatur Street about 20 or 30 feet, and that skid was right behind the Sterns Exchange truck, and I called the attention of the driver to the skid mark, and the skid mark showed for a distance of some 25 or 30 feet right on Bienville Street across Decatur.

It is evident from the testimony quoted and from a careful examination of the entire record that contributary negligence was clearly established. The trail/ Judge saw and heard the witnesses and could better judge of the credibility of the witnesses than we can, and it has often been held that, under circumstances such as these, where questions of fact alone are involved, that the judgment of the trial judge unless absolutely erroneous will be maintained by this Court.

For the reasons herein assigned, it is orderd, adjudged and decredd, that the judgment appealed from  be, and the same is hereby affirmed with costs against plaintiff, appellant.

–Judgment Affirmed–